UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAMELA A. JONES, on behalf of herself   :
an others similarly situated,           :
                                        :            NO. 3:06CV890 (MRK)
                    Plaintiffs,         :
                                        :
v.                                      :
                                        :
WALGREEN, CO.,                          :
                                        :
                    Defendant.          :

MEMORANDUM OF DECISION

Presently pending before the Court is Defendant Walgreens's Motion to Transfer Venue to

the Northern District of Illinois [doc. # 6] ("Motion to Transfer").   After weighing the various

interests and factors discussed below, the Court concludes that a transfer pursuant to 28 U.S.C. §

1404(a) is appropriate, and therefore the Court grants the Motion to Transfer this case to the United

States District Court for the Northern District of Illinois.

I.

Ms. Jones brings this lawsuit on behalf of herself and "all former and current female

employees and female applicants for management positions nationwide and in Puerto Rico" to

remedy a "pervasive policy of gender discrimination instituted and maintained by Walgreens" in

violation of Title VII, 42 U.S.C. § 2000e-2, and the Equal Pay Act, 29 U.S.C. § 206(d).   Complaint

[doc. # 1] ¶ 1. Ms. Jones alleges that Walgreens "practices nationwide (plus Puerto Rico) systemic

gender discrimination against its female employees" by engaging in "a continuing pattern and

practice of gender discrimination in awarding promotions and more profitable store assignments in

favor of male employees." *Id.* ¶ 11.  More specifically, Ms. Jones asserts that Walgreens "segregates

female Store Manager employees into lower income and lower volume stores," *id*. ¶ 12, and that in considering promotions from Store Manager to District Manager, "Walgreens does not give equivalent weight to shelf-stocking ability versus time and personnel management qualifications," all of which results in "a number of adverse career and economic consequences for female management employees," *id*. ¶¶ 14, 16.   In addition, the Complaint alleges that "any female employee who challenges the disparate manner of treatment" by Walgreens is retaliated against by the company, a practice that Ms. Jones claims is "endemic within Walgreens management culture [and] is typical as to the Class as a whole." *Id.* ¶ 45.  According to the Complaint, the putative class works in more than 5,134 stores in forty-four states (plus Puerto Rico) and includes "all female Walgreens employees, all female applicants for Walgreens Store Manager, all female employees seeking to promote in the 'Retail Career Path,' all female Walgreens employees seeking to promote to non-retail corporate positions, and all female Walgrens employees seeking not to be segregated by sex into lower income/lower volume stores." *Id.* ¶ 17.

The alleged discrimination against Ms. Jones occurred primarily during her eighteen years (1986-2004) of employment as a Walgreens Store Manager in Enfield, Connecticut. *See id*. ¶ 35. At the time she filed this action, though, Ms. Jones was a resident of Massachusetts. *Id*.  Seeking to remedy the alleged discrimination, Ms. Jones filed a discrimination complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO), along with the Equal Employment Opportunity Commission (EEOC), in 2005. *See* Memorandum of Law in Support of Plaintiff's Objection to Defendant's Motion to Transfer Venue [doc. # 11] at 1.   Upon receiving "right-to-sue" letters from the CHRO and EEOC, Ms. Jones filed this lawsuit.  *See id*. at 2. Walgreens rejects all of Ms. Jones's claims and denies that it has "'instituted or maintained' any

discriminatory policies or procedures."  Memorandum of Law in Support of Defendant's Motion to Transfer Venue [doc. # 7] at 2.  Walgreens also challenges Ms. Jones's right to bring this action as a class action.  *See* Answer and Affirmative Defenses [doc. # 5] at 6.

Early in the case, before any discovery or significant court involvement, Walgreens moved to transfer this action to the United States District Court for the Northern District of Illinois.  In its Motion to Transfer, Walgreens argues that, because Ms. Jones brought her claim as a class action and because she has alleged a pervasive company policy and practice of discrimination against all female employees nationwide, many of the relevant witnesses are situated near Walgreens's corporate headquarters outside of Chicago, in the Northern District of Illinois.  In addition, Walgreens asserts that any documents relevant to this alleged nationwide policy would necessarily be located at its corporate headquarters and that the operative facts underlying development and maintenance of such an alleged nationwide company policy likely occurred at its corporate headquarters as well.  Mem. of Law in Supp. of Def.'s Mot. to Transfer [doc. # 7].  Ms. Jones objects to transfer, arguing that only a few Walgreens management personnel would be inconvenienced by having to travel to Connecticut for depositions and trial, that most of the documents are in electronic format and therefore do not justify a transfer, and that the locus of events in Ms. Jones's own case occurred primarily in Connecticut.  Therefore, according to Ms. Jones, this Court should retain jurisdiction over her case.  *See* Mem. of Law in Supp. of Pl.'s Objection to Def.'s Mot. to Transfer Venue [doc. # 11] at 3-5.

II.

Section 1404(a) provides that a district court may transfer any civil action to any other district where the action might have been brought "[f]or the convenience of the parties and the witnesses,

in the interest of justice." 28 U.S.C. § 1404(a).  The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  In considering a motion to transfer, "[d]istrict courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

A district court must undertake a two-part inquiry in determining whether transfer is appropriate.  First, the court must determine whether the action sought to be transferred is one that could originally have been brought in the transferee district.  *See* 28 U.S.C. § 1404(a) ("[a] district court may transfer any civil action to any other district or division where it might have been brought.").  Second, the court must evaluate whether transfer is warranted, considering several specific factors related to "the convenience of the parties and witnesses [and] in the interest of justice." *Id.*  The Second Circuit recently listed seven factors that a court should consider in deciding whether to grant a motion to transfer:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co.*, 462 F.3d at 106-07.  In addition to these considerations, other courts have identified two additional factors: (1) "the forum's familiarity with the governing law"; and (2) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S & M NuTec*, No. 06 Civ. 1534(WCC), 2006 WL 2935754, at *2 (S.D.N.Y. Oct. 11, 2006); *see also In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (listing the same

factors).  The moving party should make a "clear-cut showing . . . that convenience and justice for

all parties demands that the litigation proceed elsewhere."  *Charter Oak Fire Ins. Co. v. Broan-*

*Nutone, LLC*,  294 F. Supp. 2d 218, 219 (D. Conn. 2003) (internal quotation marks omitted).  For

"unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely

be disturbed." *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950).

III.

Before examining the foregoing factors, the Court must address a threshold issue–namely,

*when* to consider the issue of transfer.  While motions to transfer are typically considered at an early

stage in a case, and "[v]enue objections are waived if not timely asserted," *Smith v. Woosley*, 399

F.3d 428, 434 (2d Cir. 2005), nothing bars a court from granting a motion to transfer venue at a later

stage in a case, *see Lencco Racing Co., Inc. v. Arctco, Inc.*, 953 F. Supp. 69, 70 n.1 (W.D.N.Y. 1997)

("A motion to transfer venue may be made at any time.").

The reason timing is important in this case is that Walgreens's motion is wholly dependent

upon the class allegations of Ms. Jones's Complaint.  Indeed, Walgreens conceded at oral argument

on November 13, 2006 [doc. # 16], that it would not have sought to transfer this case if Ms. Jones

had brought her complaint in her own name only.  Thus, it is the class action aspect of this case that,

according to Walgreens, makes it appropriate for transfer.  Yet, Ms. Jones has not yet moved to

certify her case as a class action, and when she does, Walgreens has stated that it will object to

certification.  As a result, there is certainly no guarantee at this time that Ms. Jones's case will be

certified as a class action.[1]

---

[1]  *Federal Rule of Civil Procedure* 23(c)(1)(A) states that the court should consider class
certification "at an early practicable time."  This language, which was adopted in 2003 to replace the
prior requirement to consider class certification "as soon as practicable," "recognizes that there may

Ms. Jones argues that because it "is not a foregone conclusion that the Court will grant the Plaintiff's request for class certification," granting the motion to transfer prior to deciding class certification effectively "put[s] the cart before the horse."  Mem. of Law in Supp. of Pl.'s Obj. to Def.'s Mot. to Transfer Venue [doc. # 11] at 2.  Walgreens agrees that if this action is not certified as a class action, the proper venue for Ms. Jones's claim is the District of Connecticut, though the company insists that the Court should decide the issue of transfer now on the basis of the allegations of the Complaint and leave the question of class certification to the court that will manage and ultimately try the case.  Walgreens also represents to the Court that it consents to a transfer of this case back to the District of Connecticut if the case is not certified as a class action.

Because determination of class certification is so crucially important to the propriety of transfer, the Court has seriously considered delaying a ruling on the motion to transfer until after it determines the issue of class certification.  However, numerous practical considerations strongly suggest that the Court should decide the motion to transfer before class certification.  First, a decision on class certification will significantly affect the nature of this case, and consequently the scope and timing of discovery, motion practice, and trial.  As a result, the Court believes that the numerous issues raised by class certification are best left to the court that will have the responsibility of managing discovery, case schedule, motion practice, and trial.

For  example, Ms. Jones asks in her Complaint that this action be certified as a hybrid Rule 26(b)(2)-(b)(3) action.  If Ms. Jones's request were granted, the case would proceed in stages.  The

---

be many valid reasons justifying the deferral of the initial certification decision."  7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1785.3 (3d ed. 2005). Therefore, the Court is no longer required to consider class certification at the very earliest stages of a case.

first stage would be devoted to liability, class-wide injunctive relief, and punitive damages, and the

second stage would focus on individual relief, including back pay, compensatory damages, and

individual injunctive relief. *See, e.g.*, *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147,

162 (2d Cir. 2001) (describing the option of "certify[ing] the claims for injunctive relief under Rule

23(b)(2) and the damages claims under Rule 23(b)(3)").   Needless to say, the determination of

whether to proceed as a hybrid class action will have a profound effect on the manner in which the

case proceeds, and therefore the decision should rest with the court that will have to manage this case

to trial. *See* 2 Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 4:17 (4th ed. 2006)

(collecting cases where courts have conducted significant analysis to determine whether to certify

a class as a hybrid Rule 26(b)(2)-(b)(3) action).   Other issues also directly implicate the court

overseeing the case–for example, whether to certify sub-classes or issue classes, the adequacy of

class counsel, and the scope of class discovery.   If the District Court for the Northern District of

Illinois is the most appropriate court to preside over this case as a class action, then it makes

considerably more sense for a judge in the Northern District to decide the myriad issues raised by

any motion to certify this case as a class action.  As another district court judge has wisely noted in

a similar context, the transferee court should be "cautious not to pre-empt a decision by the transferee

judge on issues that may be crucial to the efficient management of the action and about which the

transferee judge may take a view different from mine." *See Umbriac v. Am. Snacks, Inc.*, 388 F.

Supp. 265, 271-72 (E.D. Pa. 1975) (deciding transfer motion before class certification).

Second, the Court expects that there will be significant discovery related to whether a class

should be certified and what its dimensions should be. *See Federal Rules of Civil Procedure* 23

advisory committee's notes to 2003 Amendments, Subdivision (c), Paragraph (1) ("[I]t is appropriate

to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis."). This discovery will principally take place at Walgreens's corporate headquarters in the Northern District of Illinois where (as discussed below) most of the employment records are stored and where most of the likely fact witnesses are located.

Third and finally, the Court is naturally concerned that if the action is not certified, Ms. Jones may face significant hardship, and therefore obstacles, in pursuing her individual claim before an Illinois court. However, the Court's concerns in this regard are substantially ameliorated by Walgreens's representation that it will not object to the case being transferred back to the District of Connecticut for completion of discovery and trial if the Northern District of Illinois rejects Ms. Jones's motion to certify a class.

The Court notes that it was unable to find any reported decision in which a court delayed ruling on a motion to transfer until class certification issues were resolved. However, the Court found several decisions in which courts transferred cases *before* ruling on class certification. For example, in *Butcher v. Gerber Prod.*, No. 98 CIV. 1819(RWS), 1998 WL 437150 (S.D.N.Y. 1998), plaintiffs brought an age discrimination lawsuit on behalf of a putative class consisting of former employees of Gerber Products. Before considering class certification, the district court granted a motion to transfer the case from the home district of one of the named plaintiffs to the district in which the company's headquarters was located. The court did so, in part, because a majority of the managers whom the company intended to call as witnesses worked out of the company's headquarters and only one of the named plaintiffs resided in the district in which the case had been filed. *Id.* at *4. *See also Glass*, 2006 WL 2935754, at *12 (granting motion to transfer prior to class certification); *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 399 (same).

IV.

Accordingly, the Court now turns to whether this case should be transferred to the Northern District of Illinois. Neither party disputes that this action could have been brought in the Northern District of Illinois, and thus the first requirement for transfer is satisfied. *See* 28 U.S.C. § 1404(a) ("[a] district court may transfer any civil action to any other district or division where it might have been brought."). The balance of this opinion will focus, therefore, on the second required inquiry related to the convenience of parties and witnesses, and the interest of justice.

**Plaintiff's Choice of Forum**

Ordinarily, a plaintiff's choice of forum is "given great weight" in the analysis required by § 1404(a). *D.H. Blair & Co. v. Gottdiener*, 462 F.3d at 107; *see also In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 398 (stating that plaintiff's choice is "entitled to considerable weight") (internal quotation marks omitted). As the Second Circuit has put it, "[t]he interest of justice favors retention of jurisdiction in the forum chosen by an aggrieved party where, as here, Congress has given [her] a choice." *Newsweek, Inc. v. U.S. Postal Serv.*, 652 F.2d 239, 243 (2d Cir. 1981). While Ms. Jones no longer resides in Connecticut, she brought her CHRO claim in Connecticut and the discrimination against Ms. Jones purportedly occurred in Connecticut. Connecticut, therefore, has a significant connection to Ms. Jones's claims and as a result, the Court would ordinarily give Ms. Jones's choice of forum significant, though not controlling, weight.

But this is not an individual action by Ms. Jones. Rather, Ms. Jones brings this case on behalf of all female Walgreens employees "nationwide (plus Puerto Rico)." Compl. [doc. # 1] ¶ 1. Because Ms. Jones elected to bring her lawsuit as a class action, her choice of forum is entitled to less weight. *See In re Warrick*, 70 F.3d 736, 741 & n.7 (2d Cir. 1995) ("It is true . . . that the

plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."); *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 398 ("[I]n class actions less weight is given to the plaintiff's choice.") (internal quotation marks omitted). The reason that Ms. Jones's choice of forum is accorded less weight in the context of a class action is because "in a class action there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim." *Id.* (internal quotation marks omitted). Moreover, unlike cases where a "disproportionate share of the putative class members reside in [the] chosen forum," *In re Warrick*, 70 F.3d at 741 n.7, the opposite is true here. Barely one percent of Walgreens's female workforce is located in Connecticut and ten times as many female Walgreens Store Managers are located in Illinois as in Connecticut. *See* Mem. of Law in Supp. of Def.'s Mot. to Transfer Venue [doc. # 7] at 10. Therefore, Ms. Jones's choice of Connecticut as the forum for her class action lawsuit is entitled to much less weight than it otherwise might receive. In the Court's view, this factor "tips only slightly in plaintiff's favor." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 398.

**Convenience of Witnesses**

The convenience of the witnesses "is generally considered the most important" of the factors a court considers in deciding whether to transfer a case. *Id.* at 395. "In order to meets its burden, the motion of the party seeking transfer must specifically list the evidence and witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony." *Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 04CIV8332MBM, 2005 WL 1337864, at * 4 (S.D.N.Y. June 3, 2005) (citing *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)).

Here, the primary thrust of each party's arguments with respect to the motion to transfer involves the convenience of potential witnesses. Walgreens, as required, submitted as part of its Memorandum of Law in Support of Defendant's Motion to Transfer Venue [doc. # 7] a list of witnesses, almost all of whom are managers located at the Walgreens's corporate headquarters in Illinois.[2]  Walgreens asserts that the named witnesses "would testify about the processes and procedures implicated by Plaintiff's Complaint." Mem. of Law in Supp. of Def.'s Mot. to Transfer Venue [doc. # 7] at 6-8.  Walgreens argues that because so many potential witnesses are located in Illinois, it would be unduly burdensome to require all of these witnesses to travel to Connecticut.

Ms. Jones responds that, while the alleged discrimination *could* have been coordinated from the company's headquarters, it need not have been. In Ms. Jones's view,  the most relevant witnesses are the Walgreens District Managers, who are scattered throughout the country.   Because of this, Ms. Jones contends that potential witnesses will enjoy no greater benefit by having the case proceed in Illinois rather than Connecticut.

The statistics regarding Walgreens employees belie Ms. Jones's argument.  For that data shows that a disproportionately large share of Walgreens employees are located in Illinois and that only a small fraction of Walgreens employees are based in Connecticut.  With respect to potential class members, Walgreens has 1,328 female employees in Connecticut, comprising just over one percent of its female workforce nationwide, as compared to 16,695 in Illinois.  *Id*. at 10.

---

[2] Beyond naming broad classes of potential witnesses, such as District Managers, Regional Vice Presidents, Recruiters, and Hiring Managers, *see*  Mem. of Law in Supp. of Def.'s Mot. to Transfer Venue [doc. # 7] at 7-8, Walgreens also specifically identified Joseph King (Corporate Manager of Human Resources Planning & Systems), Joe Douglas (Director of Store Operations), Alan Nielsen (Director of Results), Jim Reilly (Corporate Manager of Recruitment & Diversity Services), and Maureen Reim (Director of Recruitment), *id*. at 7.

Furthermore, of the 220 District Managers nationwide, thirty-nine supervise stores in the area of Illinois, Wisconsin, and Indiana, as compared to only eight who are responsible for stores in the Connecticut/New York area. *Id.* at 8.[3]  The differences are even more stark as one climbs the chain of management.  All twenty-three of the company's Regional Vice Presidents, who oversee the District Managers, are located in Illinois. *Id*.  All twelve company recruiters, who screen the applicant pool for all non-retail (corporate) positions, are located in Illinois. *Id*.  And ninety percent of the company's hiring managers, who interview candidates for corporate positions, are located in Illinois. *Id*.

Significant to the Court's analysis is Ms. Jones's allegation of a systematic and pervasive pattern and practice of discrimination by Walgreens.  As Ms. Jones's counsel conceded during oral argument, it is unlikely in the extreme that the discrimination allegedly suffered by all female Walgreens employees nationwide has occurred as a result of the coincidental conduct of hundreds of District Managers operating independently.  Rather, Ms. Jones's counsel agreed, in order for the "systemic" and "endemic" discrimination Ms. Jones describes to have occurred, there would have to have been either some affirmative acts or, at a minimum, intentional disregard at the Walgreens corporate level.

---

[3] The geographic areas used to compare the number of District Managers were selected by Walgreens's Corporate Manager for Human Resources Planning and Systems. *See* Mem. of Law in Supp. of Def.'s Mot. to Transfer Venue [doc. # 7] Ex. B, ¶ 9.

Ms. Jones attempted to mitigate the disparity in witnesses and potential class members by comparing the number of Walgreens stores within a 9.5 hour driving radius of Chicago compared to the number located within a 9.5 hour driving radius of Connecticut. *See* Plaintiff's Surreply in Objection to the Defendant's Motion to Transfer Venue to the Northern District of Illinois [doc. # 15] at 6 & nn. 6-7.  As Walgreens's counsel correctly noted during oral argument, however, the relevant radius is 100 miles from the courthouse, a radius corresponding to the Court's subpoena power.  Within the 100-mile radius, the numbers weigh heavily in favor of Northern District of the Illinois.

Ms. Jones argues that "[i]f, for example, the Defendant's records were to demonstrate that less than thirty percent of all retail stores nationwide are managed by women, protestations from the Defendant Company's home office employees to the contrary would be both a) incredible and b) irrelevant."  Mem. of Law in Supp. of Pl.'s Obj. to Def.'s Mot. to Transfer Venue [doc. # 11] at 4. The Court disagrees.  Statistical evidence is always important in pattern and practice cases.  *See Robinson*, 267 F.3d at 158.  But such statistics typically must be put in context and explained.  *See Bliss v. Rochester City Sch. Dist.*, 196 F. Supp. 2d 314, 332 (W.D.N.Y. 2002) ("[I]n general, a pattern or practice of disparate treatment is shown through a combination of statistical evidence demonstrating substantial disparities . . . buttressed by evidence of general policies or specific instances of discrimination."). With respect to any statistical evidence introduced by Ms. Jones regarding disparities in promoting female employees, the individuals who implemented the relevant hiring policies or oversaw the hiring done by District Managers are located in Illinois.  Moreover, as noted above, all recruiters and hiring managers for every corporate position within Walgreens are located in Illinois. *See* Mem. of Law in Supp. of Def.'s Mot. to Transfer Venue [doc. # 7] at 8.

The Court's conclusion that the convenience of witnesses in this case weighs in favor of transfer is bolstered by decisions of other courts.  In *Butcher*, which involved an age discrimination claim, the defendant-company offered as potential witnesses five current and former employees who had knowledge of why the company decided to make the allegedly discriminatory changes to the company's sales force. *See Butcher*, 1998 WL 437150, at *4.  None of the five potential witnesses resided in the originally-selected venue of New York.  Three resided in Michigan, where the company had its headquarters, and two resided in Illinois.  Only one of the named plaintiffs resided in New York and that plaintiff had a health condition, making it a hardship for him to travel.

13

Notwithstanding the plaintiff's health condition, the district court found that the "convenience of witnesses" weighed in favor of transfer, in part, because the company offered witnesses that "have knowledge regarding [the company's] decisions and will testify concerning the reasons for those decisions." *Id.* Similarly, in *In re Collins*, which was a putative securities class action, the court concluded that the convenience of witnesses weighed in favor of transfer after it found that managers of the defendant-company, who were offered as potential witnesses, "plainly possess important knowledge about the [company's] accounting practices . . . and other topics at the core of the plaintiff's lawsuit." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d at 395.

Because far more female employees are located in the Illinois area than in Connecticut and because a disproportionate number of managers and corporate employees involved in the development and implementation of Walgreens's hiring and promotion decisions and policies are located in Illinois, the Court concludes that the convenience of witnesses in this pattern and practice discrimination case weighs strongly in favor of transfer.

**Location of Relevant Documents**

Both parties agree that the bulk of the documents involved in this case are in an electronic format that could be transmitted with relative ease regardless of the location of the trial. Therefore, the Court finds that this factor has no bearing on the decision to transfer.

**Convenience of Parties**

In considering the convenience of the parties, Walgreens reasserts that most of the witnesses will be Walgreens managers located in Illinois and that it would be burdensome for them to have to travel to Connecticut. Ms. Jones argues strenuously that she has limited funds, especially following her termination from Walgreens on October 13, 2006, and that a transfer would substantially impede

her ability to pursue her discrimination claim.  *See* Pl.'s Surreply in Objection to the Def.'s Mot. to Transfer Venue to the N. Dist. of Ill. [doc. # 15] at 1-2.  The Court takes seriously Ms. Jones's concerns regarding financial hardship.  However, as the Court noted during oral argument, it is unclear to the Court how adversely Ms. Jones would be affected by a transfer.  Walgreens conceded that if the case were heard in Illinois, and Walgreens wished to take Ms. Jones's deposition, an attorney for the company would need to travel to Massachusetts to do so.  And regardless of whether the case is transferred, Ms. Jones's counsel would be expected to travel to Illinois to take the depositions of Walgreens managers located at the corporate headquarters.  Moreover, Ms. Jones does not apparently face the burden of any ongoing expense since, as alleged in the Complaint, "Class Counsel has agreed to advance the costs of the out-of-pocket expenses of this litigation and has the ability to do so."  Compl. [doc. # 1] ¶ 23.

In addition to considering the need to travel for depositions, the Court also notes that Ms. Jones no longer lives in Connecticut, and she would therefore need to travel, albeit a shorter distance, to attend any proceedings, whether they are located in Connecticut or Illinois.  Finally, because Ms. Jones pursued this claim as a class action, the Court must consider the interests of other class plaintiffs, who are located throughout the country.  On balance, the Court believes that this factor does not weigh in favor of either party.

**Locus of Operative Facts**

While the locus of operative facts with respect to Ms. Jones is primarily in Connecticut, the Court must consider the fact that this case may become a nationwide class action.  Because the allegations involve claims of pervasive and systemic discrimination, the Court finds that the locus of operative facts is likely to be in Illinois.  Any systemic policy that resulted in unequal pay for

female employees necessarily would have originated at the company's headquarters.  Furthermore, Ms. Jones alleges that female employees are not properly considered for promotions to District Manager positions, because, in part, "Walgreens does not give equivalent weight to shelf-stocking ability versus time and personnel management qualifications."  Compl. [doc. # 1] ¶ 16.  These allegedly discriminatory rating systems were presumably designed and implemented at the corporate headquarters in Illinois.  As in *Butcher*, where the court found that the locus of operative facts weighed in favor of transfer because the allegedly discriminatory employment practice was coordinated from the corporate headquarters, *see* 1998 WL 437150, at *8,* the Court concludes that because Ms. Jones alleges systemic and pervasive discrimination by Walgreens, the locus of operative facts is principally in Illinois.  Therefore, this factor weighs in favor of transfer.

**Availability of Process to Compel the Attendance of Unwilling Witnesses**

Whether this case proceeds in Connecticut or the Northern District of Illinois, there will be a number of relevant witnesses who are beyond the subpoena power of the court and may not be willing to testify voluntarily.  Because this case involves claims of systemic and pervasive discrimination, much of the testimony will involve statistical evidence, and experts witnesses may be found almost anywhere in the country.  While Ms. Jones currently resides in Massachusetts, many more female store managers reside near Chicago.  Also, as previously noted, a number of upper-level managers will almost certainly be called as witnesses by either Ms. Jones or Walgreens, and most of these individuals work out of the corporate headquarters in Illinois.  The Court concludes that any weight to be given to this factor would favor transfer.

**Relative Means of the Parties**

The Court will not repeat its discussion from above regarding Ms. Jones's financial ability

to pursue this litigation.  The Court fully understands that Ms. Jones has limited means to pursue the

litigation, but that concern is mitigated by the Court's earlier finding that a transfer would not

dramatically increase the costs associated with pursuing this litigation as a class action lawsuit.  Any

weight is further mitigated by Ms. Jones's counsel representation to the Court that he has agreed to

advance any out-of-pocket expense for the litigation.  *See* Compl. [doc. # 1] ¶ 23.  The Court's

assessment of this factor also takes into consideration Walgreens's representation to the Court during

oral argument that if the Illinois court does not certify the class, Walgreens would not oppose the

transfer of the case back to Connecticut.   On balance, the Court concludes that the relative means

of the parties tips only slightly in Ms. Jones's favor.

**Other Factors**

Some courts have also considered "the forum's familiarity with the governing law" and "trial

efficiency and the interest of justice, based on the totality of the circumstances" as relevant factors

when considering a motion to transfer. *See Glass*, 2006 WL 2935754, at *2.  The parties agree that

both potential forums are equally familiar with the governing law.

Walgreens, however, has asserted that a transfer "may well promote[] judicial efficiency"

because "[a]lthough the Northern District of Illinois handles more cases overall, the median time

interval for the disposition of a case is significantly shorter than in the District of Connecticut–6.5

months as opposed to 11.6 months." Mem. of Law in Supp. of Def.'s Mot. to Transfer [doc. # 7] at

14 n.3, Ex. E.  Ms. Jones discounts this statistic, and instead concludes, with no citation, that a

transfer "will set this matter back weeks, if not several months." Def.'s Mot. to Transfer Venue to

the N. Dist. of Illinois [doc. # 15] at 7 n.8.[4]  Given that little, if any, discovery has taken place to date

and there has been no effort to certify the class, the Court does not see how a transfer will delay the

proceeding by several months, especially given that the median time to disposition in the Northern

District is shorter by nearly five months than the median time for disposition in Connecticut.

Therefore, the Court finds that this factor weighs in favor of transfer.

After considering all nine factors related to a motion to transfer venue, the Court finds that

no factor clearly weighs in favor of the Court retaining jurisdiction over Ms. Jones's claim.  Some

weight is given to Ms. Jones's choice of forum, but any such weight is minimal given the class action

nature of the claim.  The Court finds that  the "convenience of witnesses" and "locus of operative

facts," as well as, to a lesser extent, the "availability of process to compel the attendance of unwilling

witnesses" and "trial efficiency and the interest of justice, based on the totality of the circumstances"

weigh, in their totality, heavily in favor of transferring the case to Illinois.  Therefore, because of the

nature of Ms. Jones's class action claims, the Court concludes that Walgreens has made a  clear-cut

showing that the convenience of parties and witnesses and the interest of justice require a transfer

of this case to the Northern District of Illinois.

The Court emphasizes that its decision should not be understood as adopting or embracing

a rule that nationwide class actions alleging a pattern or practice of discrimination should always be

transferred to the home district of the corporate defendant. To the contrary, it is clear that each

motion to transfer must be assessed on a case-by-case basis. *See Stewart Organization, Inc. v. Ricoh*

---

[4] As  noted, though her Complaint was filed in June 2006, Ms. Jones has not yet filed a
motion to certify the class and the parties only recently filed their Rule 26(f) report with the Court
on November 15, following the Court's request to do so during oral argument.  Therefore, it does not
appear to the Court that Ms. Jones has been seeking an especially expeditious schedule in pursuing
her claim.

*Corp*., 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"); *see also D.H. Blair & Co.*, 462 F.3d at 106 (stating same principle). Here, however, the facts alleged indicate that the broad class of plaintiffs have little connection to Connecticut and that there are potentially dozens of relevant witnesses located at Walgreens's corporate headquarters whose testimony will be necessary to prove or disprove the claims of systematic and pervasive discrimination alleged by Ms. Jones.

V.

In sum, the Court GRANTS Walgreens's Motion to Transfer Venue to the Northern District of Illinois [doc. # 6].  **The Clerk is directed to transfer this case to the United States District Court for the Northern District of Illinois**.

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

Dated at New Haven, Connecticut: **December 1, 2006.**

19